IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ROBIN THOMAS,

    Plaintiff,

v.                                                               No. 06-2134 B

GRINDER & HAIZLIP CONSTRUCTION,

    Defendant.
_____

ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

INTRODUCTION

This lawsuit has been brought by the Plaintiff, Robin Thomas, against his former employer, the Defendant, Grinder & Haizlip Construction (sometimes referred to herein as "G&H"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. In a motion filed July 17, 2007, the Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all claims asserted by the Plaintiff.

STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir.

1988).

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following material facts set out by the Defendant are undisputed by Thomas unless otherwise noted. Thomas began his employment with G&H in October 2003 as a job site superintendent. He was assigned to work at the Premcor Refinery construction site where he was responsible for managing and overseeing the work of a crew of construction workers. The Defendant employed a general superintendent at the work site with responsibility for the entire job. Co-superintendents, including the Plaintiff, reported to the general superintendent. Foremen, who actually directed the work of the construction crews, reported to the co-superintendents.

It has been alleged herein that, on April 19, 2004, a white carpenter, Neal Rhodes, informed

2

the Plaintiff that one of the foremen, Steve Bland, had told a Mexican worker, known as "Cookie," that "he was going to send him, if he didn't tighten up, send him down on Robin's crew with the niggers." Thomas avers that he personally heard Bland make the statement.[1] While the Plaintiff never reported the comment to management himself, he encouraged other black employees to do so. Nor did he confront Bland directly. Bland's comment was reported to management by Gerald Dixon, a black employee to whom Thomas had not spoken. G&H investigated the allegation by interviewing Bland and Cookie, both of whom denied the statement was ever made. When the Defendant attempted to interview Rhodes, he resigned. It is undisputed that the inquiry revealed the rumor concerning the statement was either started or perpetuated by the Plaintiff. Based on its investigation, G&H concluded the story was not true and terminated Thomas for instigating racial disharmony in the workplace and for using racial slurs to perpetuate the rumor. The Plaintiff, on the other hand, submits that he was terminated for advising black employees to exercise their protected rights. Dixon was not terminated.

ANALYSIS OF THE PARTIES' CONTENTIONS

I.   Racial Discrimination

In the instant motion, the Defendant argues that dismissal of the racial discrimination claim

---

[1] At one point in his deposition, Thomas recalled that Bland told him personally when he first began working for G&H that he had advised the Mexican employee "that he was going to send his spic ass down on a crew with [Donny Mahoney, who supervised a group of black workers] and his niggers." (Dep. of Robin Thomas ("Thomas Dep.") at 76) Later in his deposition, Thomas, when asked if he knew who else heard Bland's comment, testified thusly:

> No, sir, because I wasn't down there. And like I said, I don't know, you know -- I don't know when it was said. Don't know if it was said. You know, all I know is we was -- we was going to try and get something done about it . . .

(Thomas Dep. at 120)

3

is warranted based on Thomas' failure to present it to the Equal Employment Opportunity Commission ("EEOC"). "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." Albeita v. TransAm. Mailings, Inc., 159 F.3d 246, 254 (6th Cir. 1998), reh'g & suggestion for reh'g en banc denied (Dec. 23, 1998). "The judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Tartt v. City of Clarksville, 149 F.App'x 456, 461 (6th Cir. 2005) (quoting Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002)) (internal quotation marks omitted). "Pursuant to this rule, [the Sixth Circuit] ha[s] recognized that where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Weigel, 302 F.3d at 380 (citation and internal quotation marks omitted). The Sixth Circuit has specifically held that a plaintiff's failure to check the appropriate box on the EEOC charge form "is not dispositive of whether [he] exhausted his administrative remedies." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004).

The EEOC charge filed by the Plaintiff, a copy of which has been submitted to the Court, contains the following narrative:

> I was hired as a Job Site Superintendent on September 10, 2003. I worked in this position until April 20, 2004. I was informed on April 20, 2004, that my employment was being terminated for instigating racial disharmony and using racial slurs. Prior to my dismissal, on April 19, 2004, I informed a Foreman that it was not right for him to use racial comments "the N word" toward the Black employees or even making comments of a threaten [sic] nature to the Hispanics of placing them with the Blacks. I also advised the employees whom it was directed toward to inform management of the matter. Once it was brought to management attention, I was advised that I was an instigator inciting trouble.

4

> I believe that I was retaliated against and discharged as a result of opposing actions unlawful under Title VII of the Civil Rights Act of 1964, as amended.

(Mem. in Supp. of Def.'s Mot. for Summ. J., Ex. 3) Not only does the charge fail to suggest that the Plaintiff was discriminated against because of his race, there is no indication therein that the Plaintiff is black. Therefore, the Court finds that he has failed to exhaust his administrative remedies as to that claim. See Collins v. Ohio Dep't of Job & Family Servs., No. C2-05-461, 2007 WL 2783661, at *16 (S.D. Ohio Sept. 24, 2007) (plaintiff who failed to include language in EEOC charge addressing disability or age, or indicate that he was a protected minority, did not exhaust administrative remedies with respect to disability and age claims). Indeed, in offering no argument whatever in support of his race discrimination claim in response to the dispositive motion, Thomas appears not to dispute the Defendant's argument for dismissal. In any case, the Defendant's motion is GRANTED as to the race discrimination claim, which is hereby dismissed without prejudice. See Dobbins v. Tenn. Valley Auth., No. 3:05-CV-78, 2007 WL 2509691, at *8 (E.D. Tenn. Aug. 30, 2007) ("Dismissal without prejudice is generally the appropriate remedy for a Title VII claim filed prematurely before administrative remedies are exhausted and a right-to-sue letter secured").

II.  Retaliation

Title VII's anti-retaliation provision states in pertinent part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there

5

was a causal connection between the protected activity and the adverse employment action or harassment." Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007). Title VII's opposition clause protects an employee "against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir.), cert. denied, 531 U.S. 1052, 121 S. Ct. 657, 148 L. Ed. 2d 560 (2000). If a plaintiff succeeds in proving a prima facie case, "then the burden shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for [the plaintiff's] discharge. [The plaintiff] must then demonstrate that the proffered reason was not the true reason for the employment action--i.e., that the reason was a mere pretext for discrimination." Id. at 578-79 (internal citations omitted). The Sixth Circuit has recognized that "[t]he burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000). Nonetheless, "if the plaintiff cannot produce facts supporting each element of the prima facie case, then the defendant is entitled to summary judgment." Dyer v. Cmty Mem'l Hosp., No. 03-10250-BC, 2006 WL 435721, at *7 (E.D. Mich. Feb. 21, 2006).

G&H attacks only the first prong of the prima facie case, arguing that Thomas cannot make a showing of activity protected under Title VII. As noted in Johnson,

> The [EEOC] has identified a number of examples of "opposing" conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer--e.g., former employers, union, and co-workers. The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition be based on a reasonable and good faith belief that the opposed practices were unlawful. In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful. Moreover, the person claiming retaliation need not be the person who engaged in the opposition, such that Title VII prohibits retaliation against someone so closely related to or associated with

6

the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.

Id. at 579-80 (internal citations and quotation marks omitted).

It is the position of the Defendant that Thomas could not have reasonably believed he was engaging in protected activity in encouraging co-workers to complain about Bland's comment.[2] The Plaintiff described the circumstances surrounding Bland's comment in his deposition:

> A: . . . Neal came in the break room. We were already all in there already sitting down, and Neal Rhodes came in the break trailer and told aloud that -- what Steve Bland had said, that he had told Cookie, the Mexican, that he was going to send him, if he didn't tighten up, send him down on Robin's crew with the niggers.
>
> \*   \*   \*
>
> A: I don't know if [Bland] said it that morning or the day before. Neal just came in and told aloud, right there with all us sitting there, and like I said, there was probably six -- six, maybe more, black men there. And said what he said. And then me and Tony got to talking, and I said, you know, that's ridiculous.
>
> Q: Tony Cummings?
>
> A: I said we need to go to management with this, you know, him saying that stuff. And Gerald Dixon was not in there at the time because he's one that will stand up for hisself. The other men –
>
> Q: Is Tony Cummings black?
>
> A: No, he is white.
>
> Q: So you made –
>
> A: Me and him was telling them, hey, y'all need to gang up, and we need to go over here next door and talk to Mr. Huffman about this racial stuff going on.

(Thomas Dep. at 86-87) Thomas further testified as follows:

---

[2]The Plaintiff has offered no argument in response to the Defendant's assertion.

7

> Q: Okay. Now, in -- in 3H, what I was wanting to make sure of, and we've already asked this once. We're talking about this one comment that took place. All of this revolves around the one comment that took place that you heard in the break room on April 19th; is that right?
>
> A: Well, what Neal said are the –
>
> Q: Right.
>
> A: -- actual –
>
> Q: Right. I'm just trying to make sure that we're just talking about this one -- that one comment that occurred in that trailer that day. It says here that Grinder and Haizlip took action by discharging me from my job because I told my crew to complain to management about being referred to as niggers by Steve Bland. That's what we are talking about, that comment that occurred in the trailer that day, right?
>
> A: Yes, sir. But now, if you were talking about, that comment wasn't made in the trailer.
>
> Q: Right. Okay. I understand. But I'm making sure that this is referencing the same sequence of events.
>
> A: Yes, sir.

(Thomas Dep. at 110-11)

Viewing the evidence in the light most favorable to the Plaintiff, Bland apparently made two nearly identical comments about Cookie, one directly to Thomas and the other referenced by Rhodes. Title VII prohibits actions by an employer taken on the basis of race that discriminate against an individual "with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). "[H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S. Ct. 1508, 1509, 149 L. Ed. 2d 509 (2001) (citing Faragher v. Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275,

8

141 L. Ed. 2d 662 (1998)) (internal quotation marks omitted).

> Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id. at 270-71, 121 S. Ct. at 1510 (citing Faragher, 524 U.S. at 787-88) (internal quotation marks omitted). "Hence, . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. at 271, 121 S. Ct. at 1510 (citing Faragher, 524 U.S. at 788) (internal quotation marks omitted).

Cases cited by G&H support summary judgment. In Clark, the plaintiff and two male employees, one of whom was her supervisor, met to review psychological evaluation reports for job applicants. It was reported that one of the applicants once commented to a co-worker that "I hear making love to you is like making love to the Grand Canyon." The supervisor read the comment out loud, looked at the plaintiff and stated "I don't know what that means," to which the other male employee replied, "Well, I'll tell you later." Both men chuckled. Id. at 269, 121 S. Ct. at 1509. The plaintiff complained to various of the defendant's employees and alleged that she was punished for her complaints. Id. at 270, 121 S. Ct. at 1509. The Supreme Court concluded that "[n]o reasonable person could have believed that the single incident recounted [by the plaintiff] violated Title VII's standard." Rather, the comments and chuckling were "at worst an 'isolated incident' that cannot remotely be considered 'extremely serious.'" Id. at 271, 121 S. Ct. at 1510.

In Turner v. Baylor Richardson Medical Center, 476 F.3d 337 (5th Cir. 2007), the plaintiff, a black female, alleged that her white supervisor discussed her volunteer work with inner city children who she referred to as "ghetto children," responded to plaintiff's statement that she was

9

considering taking college classes by stating that she had previously worked at a university where black students took evening classes because they could not qualify for regular admission, and expressed surprise and disdain upon learning that plaintiff shopped at an upscale mall, drove a Volvo and had a son who bought and sold cars as a hobby. Turner, 476 F.3d at 342. Turner alleged in her complaint that she suffered retaliation upon her opposition to the supervisor's "ghetto children" stories. Id. at 348. The Fifth Circuit rejected the claim on the grounds that "[b]ecause Turner could not have reasonably believed that [the supervisor's] 'ghetto children' statements constituted an unlawful employment practice in and of themselves, Turner's response to this incident cannot be considered protected activity." Id. at 349.

In Jordan v. Alternative Resources Corp., 458 F.3d 332 (4th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 2036, 167 L. Ed. 2d 804 (U.S. Apr. 16, 2007) (No. 06-1086), the plaintiff averred that he overheard a co-worker, who was watching television at the workplace, exclaim to no one in particular that "[t]hey should put those two black monkeys in a cage with a bunch of black apes and let the apes f--ck them," in response to a news report of the arrests of two black men in random sniper killings in the Washington, D.C. area. Jordan, 458 F.3d at 336. It was the Fourth Circuit's opinion that no objectively reasonable person could have believed the mere fact that one's co-worker had revealed himself to be a racist was sufficient to support a claim that an abusive and hostile working environment so severe or pervasive as to alter the conditions of the victim's employment had been or was being created. Id. at 341. The court of appeals also denied the plaintiff's request to amend his complaint to allege that, after hearing the comments, Jordan learned from other employees that the co-worker had made similar statements in the past. Id. In doing so, the court articulated that such isolated racial slurs, while inappropriate, were not the sort of

10

pervasive or severe conduct that created a hostile working environment. Id. at 342.

Even assuming he has presented sufficient evidence to defeat summary judgment as to the prima facie case of retaliation, Thomas's claim must nonetheless fail. The Defendant has proffered a legitimate, nondiscriminatory reason for terminating his employment -- instigating racial disharmony in the workplace and using racial slurs to perpetuate a rumor. At this point, the Plaintiff must show by a preponderance of the evidence that G&H intentionally discriminated against him. See Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000), reh'g & suggestion for reh'g en banc denied (May 4, 2000).

Thomas appears to suggest that, by firing him in connection with a racial situation, the proffered reason for his termination was itself discriminatory. However, there is no evidence that the Plaintiff was fired *because* he was black. Indeed, such an argument is belied by the fact that the employee who actually complained to management about Bland's alleged statement was black and suffered no repercussions whatever. Moreover, according to the evidence presented to the Court, Cummings, the white employee who, along with Thomas, encouraged black employees in the break room to do something about Bland's actions, was also fired as a result of the incident. Therefore, in this Court's view, the Plaintiff has failed to establish a question of material fact as to whether the Defendant has offered a legitimate, nondiscriminatory reason for his discharge or that the reason presented was based on pretext. See Martin v. El Nell Inc., No. 3:03-CV-2209-D, 2005 WL 2148651, at *4 (N.D. Tex. Sept. 7, 2005) (employee who made racially offensive remark not fired because of her race; therefore, stated reason for termination not discriminatory). Summary judgment is therefore GRANTED as to the retaliation claim.

## CONCLUSION

Based on the foregoing, the motion of the Defendant is GRANTED and this case is dismissed in its entirety. The Clerk is directed to enter judgment for the Defendant, any remaining pending motions are denied as moot, and the Case Manager is directed to remove any and all proceedings in this matter from the Court's calendar.

IT IS SO ORDERED this 9th day of December, 2007.

                                        s/ J. DANIEL BREEN
                                        UNITED STATES DISTRICT JUDGE

.